Michelle E. Armond (Bar No. 227439)
michelle.armond@armondwilson.com
ARMOND WILSON LLP
4685 MacArthur Court, Suite 390
Newport Beach, CA 92660
Phone: (949) 932-0778
Facsimile: (949) 386-1932

Douglas R. Wilson (*pro hac vice* to be filed)
doug.wilson@armondwilson.com
ARMOND WILSON LLP
13785 Research Blvd., Suite 125
Austin, Texas 78750
Phone: (512) 267-1663
Facsimile: (949) 386-1932

Attorneys for Respondent
Advanced Micro Devices, Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *IN RE* SUBPOENA TO ADVANCED MICRO DEVICES, INC.<br><br>Served in case:<br><br>*Ocean Semiconductor LLC v. STMicroelectronics, Inc.,*<br><br>Case No. 6:20-cv-01215-ADA (W.D. Tex.) | Case No.  5:22-mc-80146-VKD<br><br>Hon. Judge Virginia K. DeMarchi<br><br>**ADVANCED MICRO DEVICES, INC.'S OPPOSITION TO MOTION TO COMPEL SUBPOENA COMPLIANCE**<br><br>Date:   July 19, 2022<br>Time:   10:00 a.m.<br>Ctrm:   2, 5th Floor |

## TABLE OF CONTENTS

I.     INTRODUCTION..................................................................................................... 1

II.    ARGUMENT ........................................................................................................... 2

     A.    This Court Lacks Jurisdiction to Enforce the Subpoena .......................................... 2

     B.    ST Failed to Establish the Relevance of the Fullbrite Negotiations ........................ 5

     C.    ST Is Not Entitled to a Declaration Memorializing AMD's Search Efforts ............. 9

     D.    AMD Has Not Waived Privilege ............................................................................ 10

III.   CONCLUSION ...................................................................................................... 12

AMD's Opposition to Motion to Compel
5:22-mc-80146-VKD

**TABLE OF AUTHORITIES**

**Page No(s).**

*Amphenol Corp. v. Fractus, S.A.*, No. 19 Misc. 160 (PAE),
    2019 WL 2521300 (S.D.N.Y. June 19, 2019)...............................................................................4

*Barnes and Noble, Inc. v. LSI Corp., No. C 11-02709 EMC (LB),*
    2012 WL 6697660 (N.D. Cal. Dec. 23, 2012) .............................................................................5

*BKK Tobacco & Foods LLP v. Central Coast Agric., Inc.*,
    No. 21-mc-80189-DMR, 2021 WL 5507167 (N.D. Cal. Nov. 24, 2021) ...................................3

*Burlington Northern & Santa Fe Railway Co. v. United States District Court for
    District of Montana*,
    408 F.3d 1142 (9th Cir. 2005)....................................................................................................11

*Chambers v. Whirlpool Corp.*,
    No. SA CV 11-1733 FMO (JCGx), 2016 WL 9451360 (C.D. Cal. Aug. 12, 2016)...................3

*Charles E. Hill & Assocs., Inc. v. ABT Elecs., Inc.*,
    854 F. Supp. 2d 427 (E.D. Tex. 2012) .....................................................................................5, 6

*Collaboration Props., Inc. v. Polycom, Inc.*,
    224 F.R.D. 473 (N.D. Cal. 2004) ................................................................................................9

*Collins v. Koch Foods, Inc.*, No. MC 119-008,
    2019 WL 2520308 (S.D. Ga. June 18, 2019)..............................................................................4

*Doe 1 v. Baylor University*,
    No. 6:16-cv-173-RP, 2019 WL 2462799 (W.D. Tex. Mar. 28, 2019)........................................3

*Dominguez v. Ford Motor Co.*,
    No. 5:21-cv-00226-JWH-SP, 2021 WL 6496838 (C.D. Cal. Dec. 1, 2021)...............................9

*Europlay Capital Advisors v. Does*,
    323 F.R.D. 628 (C.D. Cal. Feb. 5, 2018) ....................................................................................4

*Glass Egg Dig. Media v. Gameloft, Inc.*,
    No. 17-cv-04165-MMC (RMI), 2019 WL 5720731 (N.D. Cal. Nov. 5, 2019) ..........................7

*In re Glumetza Antitrust Litig.*,
    No. 19-cv-05822-WHA (RMI), 2020 WL 3498067 (N.D. Cal. June 29, 2020)..........................7

*Lofton v. Verizon Wireless LLC*,
    308 F.R.D. 276 (N.D. Cal. 2015) ..............................................................................................11

*Merchant Consulting Grp, Inc. v. Beckpat, LLC*,
    No. 17-11405-PBS, 2018 WL 4510269 (D. Mass. July 11, 2018) .............................................5

**TABLE OF AUTHORITIES (cont.'d)**

**Page No(s).**

*In re MyKey Tech., Inc. Patent Litig.*,
No. CV 13-2461 AG (PLAx), 2016 WL 6681178 (C.D. Cal. Mar. 17, 2016) ...........................6

*NuVasive, Inc. v. Alphatec Holdings, Inc.*,
No. 18-cv-0347-CAB-MDD, 2018 WL 6567888 (S.D. Cal. Dec. 13, 2018) ...........................6

*Personal Audio, LLC v. Google LLC*,
No. 17-1751-CFC-CJB, 2018 WL 4502002 (D. Del. Sept. 20, 2018).......................................6

*Quality Inv. Props. Santa Clara, LLC v. Serrano Elec., Inc.*,
No. C 09-5376 LHK, 2011 WL 1364005 (N.D. Cal. Apr. 11, 2011) ......................................11

*Russell v. Maman*,
No. 18-cv-06691-RS, 2021 WL 3212646 (N.D. Cal. July 29, 2021) .........................................4

*In re Subpoena to Produce Documents of Clapp, Moroney, Bellagamba, Vucinich,
Beeman & Scheley*,
No. 14-mc-80191-RS, 2014 WL 3784112 (N.D. Cal. July 31, 2014) ......................................11

*Synopsys, Inc. v. Ricoh Co., Ltd.*,
No. C-03-2289 MJJ, 2006 WL 1867529 (N.D. Cal. July 5, 2006) .............................................9

*Trustees of Boston University v. Everlight Elecs. Co.*, Ltd.,
No. 12-cv-11935-PBS, 2014 WL 12792496 (D. Mass. Sept. 8, 2014)...................................2, 4

*Uniloc USA, Inc. v. Apple Inc.*,
No. 19-cv-01692-EJD, 2020 WL 6262349 (N.D. Cal. Oct. 23, 2020) ......................................3

*Wi-Lan Inc. v. Research in Motion Corp.*,
No. 10-cv-859, 2010 WL 2998850 (S.D. Cal. July 28, 2010) ....................................................6

*Williams v. Walker*,
No. CIV S-07-2385 WBS GGH, 2009 WL 5199227 (E.D. Cal. Dec. 22, 2009)........................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ...............................................................................................................1, 7

Fed. R. Civ. P. 37 ...............................................................................................................1, 3

Fed. R. Civ. P. 45 ........................................................................................................2, 4, 5

N.D. Cal. Civil L.R. 37-2 ..................................................................................................1, 7

Advanced Micro Devices, Inc. ("AMD") hereby submits this opposition to STMicroelectronics, Inc.'s ("ST") motion to compel subpoena compliance.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In 2020, Ocean Semiconductor sued ST in the Western District of Texas. *See Ocean Semiconductor LLC v. STMicroelectronics, Inc.*, No. 6:20-cv-1215, Dkt. 1 (W.D. Tex. Dec. 31, 2020). On December 20, 2021, ST served a subpoena on AMD relating to that litigation seeking a deposition and production of documents in the Western District of Texas. Dkt. 1-2 at 2. AMD has a large presence, with thousands of employees, in Austin, Texas. No party has contended that the subpoena's compliance requirement in Austin, Texas was improper. However, ST decided to file its motion to compel its Texas subpoena in the Northern District of California. ST's chosen venue is not only surprising, but also improper under Fed. R. Civ. P. 37(a)(2).

Under Fed. R. Civ. P. 37(a)(2) and 45, the only court with jurisdiction to enforce a third-party subpoena is in the district where compliance is required. Since ST's subpoena specifies compliance in the Western District of Texas, this Court does not have jurisdiction to compel compliance with the subpoena. Fed. R. Civ. P. 37(a)(2) ("A motion for an order to a nonparty must be made in the court where the discovery is or will be taken."). ST's motion should be denied for this reason alone.

Even if the Court were to find it has jurisdiction to enforce ST's subpoena, the Court should decline to compel AMD to produce the documents and declarations requested. ST's blanket statements that the negotiations and draft agreements relating to the sale of the Asserted Patents to Fullbrite are relevant to the case fail to meet the burden of proof required by Fed. R. Civ. P. 26 and Civil L.R. 37-2. ST also failed to show that it is entitled to the extraordinary remedy of a declaration documenting AMD's search efforts for responsive documents, as it has not provided any evidence that AMD's responses are inadequate. Moreover, AMD's alleged "delay" in producing a privilege log does not result in a waiver of privilege. The alleged "delay" was caused by ST's own overbroad requests resulting in extended negotiations in which ST ultimately agreed to the scope that AMD offered to produce and log. ST's own conduct confirms that any "delay" was not unreasonable

because ST did not file a motion to compel until five months after its specified date for compliance in January.  *See* Dkt. 1-2 at 2.  In fact, AMD agreed to produce a privilege log based on its proposed scope, and ST agreed to that scope ***before*** ST filed its motion.  Dkt. 1-6 at 2 (showing agreement on scope of privilege log by May 31, 2022, 10 days before ST filed the instant motion).  AMD has since served the privilege log as agreed.  Thus, ST's motion on this point is moot.  Moreover, even ignoring ST's role in the alleged delay, courts typically refuse to implement such a harsh penalty as privilege waiver merely because of delay.  For these reasons, the Court should deny ST's motion to compel.

## II.    ARGUMENT

### A.    This Court Lacks Jurisdiction to Enforce the Subpoena

ST asserts that the court has jurisdiction to enforce the subpoena it served on AMD because "AMD is headquartered within 100-miles of this district and compliance is proper here pursuant to Federal Rule of Civil Procedure 45(d)."  Mot. at 1.  ST provides no citation or evidence to support that assertion nor could it.  ST did not serve a subpoena that required compliance in the Northern District of California, but instead chose to serve a subpoena that required compliance in Austin, Texas (Dkt. 1-2 at 2), meaning that providing documents or a deponent in the Northern District of California would not have complied with the subpoena.  Thus, ST's assertion is unsupported.

Moreover, ST's selection of place of compliance determines the location of any motion to compel on that subpoena.  Under Rule 45, a subpoena must "command each person to whom it is directed to do the following ***at a specified time and place***."  Fed. R. Civ. P. 45(a)(1)(iii) (emphasis added).  For subpoenas seeking production of documents, the subpoena must provide a place of compliance that is "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(2)(A).  A corporation, such as AMD, regularly transacts business where it has an established place of business.  *See Trustees of Boston University v. Everlight Elecs. Co.*, Ltd., No. 12-cv-11935-PBS, 2014 WL 12792496, at *3 (D. Mass. Sept. 8, 2014) ("Apple argues BU cannot require compliance in Boston because Apple's corporate headquarters, principal place of business, and any relevant documents are located in or near Cupertino, California, which is more than 100 miles from Boston.  However, Apple admits that it

has two offices and four retail locations in Massachusetts, including two retail locations in Boston. Therefore, the Court finds that Apple regularly transacts business in Massachusetts." (internal citations omitted)); *see also Doe 1 v. Baylor University*, No. 6:16-cv-173-RP, 2019 WL 2462799, at *1 (W.D. Tex. Mar. 28, 2019) (finding that a party regularly transacted business in the Western District of Texas where it had employees working in Texas).  Thus, ST's service of a subpoena on AMD requiring compliance in Austin, Texas did not violate Rule 45(c)(2)(A).

Rule 37 governs motions to compel discovery and requires any enforcement in the Western District of Texas.  The rule states that a party moving to compel discovery from a nonparty must do so "in the court where the discovery is or will be taken."  Fed. R. Civ. P. 37(a)(2).  Under that rule, "'[t]he appropriate forum for a motion to enforce a third party subpoena is in the district where compliance is required.'"  *BKK Tobacco & Foods LLP v. Central Coast Agric., Inc.*, No. 21-mc-80189-DMR, 2021 WL 5507167, at *3 (N.D. Cal. Nov. 24, 2021) (quoting *Am. Marriage Ministries v. Google, LLC.*, No. 21-mc-80040-SK, 2021 WL 1526757, at *1 (N.D. Cal. Apr. 12, 2021)).  A court lacks jurisdiction to compel compliance with a subpoena where the subpoena requires compliance in another district.  *See Chambers v. Whirlpool Corp.*, No. SA CV 11-1733 FMO (JCGx), 2016 WL 9451360, at *3 (C.D. Cal. Aug. 12, 2016) ("[T]he court lacks jurisdiction to compel Bandas to comply with the subpoena because the subpoena requires compliance in the Southern District of Texas and 'a motion to compel production pursuant to a third-party subpoena is to be filed in 'the district where compliance is required.'" (internal citation omitted)).

Here ST's subpoena states "production is to occur by 5:00 pm on January 10, 2022 at Perkins Coie LLP, 500 West Second Street, Austin, TX 78701 or as mutually agreed upon."  *See* Dkt. 1-2 at 2.  The parties have not agreed upon another location for production.  Thus, as clearly designated by ST's subpoena, the place of compliance is Austin, Texas located in the Western District of Texas, not the Northern District of California.  Under Rules 37 and 45, since the subpoena specifies that compliance is required in Austin, only the Western District of Texas will have jurisdiction to enforce the subpoena and subpoena-related motions.  Fed. R. Civ. P. 37, 45; *see Uniloc USA, Inc. v. Apple Inc.*, No. 19-cv-01692-EJD, 2020 WL 6262349, at *1 (N.D. Cal. Oct. 23, 2020) (holding that subpoena-related motions "must be filed in 'the court for the district where compliance is

3

required'"). Thus, regardless of where AMD's headquarters are located, this Court does not have jurisdiction to enforce ST's subpoena as "compliance is required in another district." *Russell v. Maman*, No. 18-cv-06691-RS, 2021 WL 3212646, at *1 (N.D. Cal. July 29, 2021).

On June 20, 2022, counsel for AMD asked counsel for ST to withdraw its motion because it was filed in the wrong venue. Counsel for ST refused, asserting that they believed the motion was properly filed because the subpoena should have specified a location for compliance in the Northern District of California because AMD is headquartered there. *See* Declaration of Douglas Wilson ("Wilson Decl."), Ex. 1. If ST's assertion were correct, the subpoena fails to comply with Rule 45(c)(2)(A) because it specifies compliance in Austin and should be quashed. Fed. R. Civ. P. 45(d)(3)(A)(ii). However, ST's assertion is incorrect for two reasons. First, the place of compliance specified in the subpoena is not inappropriate under Fed. R. Civ. P. 45(c)(2)(A) as AMD has offices in Austin and regularly transacts business there. *See* Fed. R. Civ. P. 45(c)(2)(A) (requiring the subpoena to specify the place of compliance for the production of documents that is "within 100 miles of where the person resides, is employed ***or regularly transacts business in person***" (emphasis added)); *Trustees of Boston University*, 2014 WL 12792496 at *3 ("Apple admits that it has two offices and four retail locations in Massachusetts, including two retail locations in Boston. Therefore, this Court finds that Apple regularly transacts business in Massachusetts." (internal citation omitted)); *see also Baylor University*, 2019 WL 2462799 at *1.[1]

Second, even if the subpoena specified an improper place of compliance, this Court still does not have jurisdiction over the subpoena under the rules. As district courts have previously

---

[1] ST may attempt to rely on *Europlay Capital Advisors v. Does*, 323 F.R.D. 628, 629-30 (C.D. Cal. Feb. 5, 2018), for that case's assertion that "the proper district to hear a motion to compel is where [the corporation] is headquartered." However, *Europlay* based its decision on its characterization of three cases, none of which is accurate or supports the holding of *Europlay*. *Id.* Moreover, other courts have recognized that *Europlay* is out of step with the "majority rule" that "the place of compliance is the location the subpoena directs the documents to be sent." *Collins v. Koch Foods, Inc.*, No. MC 119-008, 2019 WL 2520308, at *2 (S.D. Ga. June 18, 2019) (analyzing cases and rejecting *Europlay*); *see also Amphenol Corp. v. Fractus, S.A.*, No. 19 Misc. 160 (PAE), 2019 WL 2521300, at *7 (S.D.N.Y. June 19, 2019) (disregarding the location of an entity's headquarters in determining the appropriate geographic scope of a subpoena).

explained:

> "[A] subpoena's listing a place of compliance that violates Rule 45(c)'s requirements is a ground for quashing or modifying the subpoena. *See* Fed. R. Civ. P. 45(d)(3)(A)(ii). But, consistent with this Court's understanding of how to determine the court or district 'where compliance is required,' a court in the district encompassing that improper place of compliance can properly make that ruling on a Rule 45(d)(3)(A)(ii) motion as the court for the district where compliance is— whether properly or not—required on the face of the subpoena, and does so consistent with Rule 45's text and structure as well as the practical realities that courts presented with subpoena-related motions and applications face."

*Merchant Consulting Grp, Inc. v. Beckpat, LLC*, No. 17-11405-PBS, 2018 WL 4510269, at *3 (D. Mass. July 11, 2018) (quoting *CSS, INC. v. Herrington*, 354 F. Supp. 3d 702, 709 (N.D. Tex. 2017)). Thus, regardless of ST's assertion that it should have designated the Northern District of California as the place of compliance, this Court does not have jurisdiction to enforce the subpoena, and the motion should be denied.

**B.    ST Failed to Establish the Relevance of the Fullbrite Negotiations**

ST moves to compel AMD to produce correspondence and drafts relating to the negotiation of the sale of patents to Fullbrite. Courts generally hold that such negotiations are not discoverable. *See Barnes and Noble, Inc. v. LSI Corp.,* No. C 11-02709 EMC (LB), 2012 WL 6697660, at *2 (N.D. Cal. Dec. 23, 2012) (*citing In re MSTG*, 675 F.3d 1337, 1347 (Fed. Cir. 2012)) ("[R]ecent Federal Circuit authority establishes that draft licenses and licensing communications (collectively, 'licensing negotiations') are not routinely discoverable. Instead, a party seeking licensing negotiations must make a 'heightened, more particularized showing of relevance.'")[2]; *Charles E. Hill & Assocs., Inc. v. ABT Elecs., Inc.*, 854 F. Supp. 2d 427, 430 (E.D. Tex. 2012) (holding that the "production of … draft license agreements and underlying settlement negotiations" "will be viewed

---

[2] ST's reliance on *Barnes and Noble* (Mot. at 10) is misplaced because the court recognized that such license negotiations are typically not discoverable. 2012 WL 6697660, at *2.

as the exception and not the rule").  In determining whether license negotiations are discoverable, courts typically require a demonstration of special relevance as license negotiations are viewed as being less probative and more prejudicial than the licenses themselves.  *NuVasive, Inc. v. Alphatec Holdings, Inc.*, No. 18-cv-0347-CAB-MDD, 2018 WL 6567888, at *2 (S.D. Cal. Dec. 13, 2018) ("The Court finds that NuVasive's agreement is sufficient to provide Alphatec what it needs. The Court finds that draft offers and draft licenses need not be produced. The Court is not convinced of the relevance of draft documents nor convinced that the effort of finding them is proportional to the needs of the case."); *In re MyKey Tech., Inc. Patent Litig.*, No. CV 13-2461 AG (PLAx), 2016 WL 6681178, at *3 (C.D. Cal. Mar. 17, 2016) ("[The motion] focuses on the settlement agreements themselves, and doesn't present separate arguments about the possible relevance of the settlement-related communications.  This isn't an adequate showing."); *Personal Audio, LLC v. Google LLC*, No. 17-1751-CFC-CJB, 2018 WL 4502002, at *1 (D. Del. Sept. 20, 2018) ("[T]he Court is currently inclined to deny this request without prejudice to Google's ability to craft a more narrowly tailored one that, for example, identifies specific draft agreement(s)/related correspondence that might be *particularly* relevant to a *known, disputed* issue regarding damages (such as a dispute about the scope of a particular licensing agreement)."); *Charles E. Hill & Assocs., Inc.*, 854 F. Supp. 2d at 429.  Courts will weigh the value of the negotiations against the burden of production to determine whether discovery of such negotiations should be allowed.  *See Wi-Lan Inc. v. Research in Motion Corp.*, No. 10-cv-859, 2010 WL 2998850, at *5-6 (S.D. Cal. July 28, 2010) ("production of these licenses and their negotiation histories would be extremely burdensome. . . [w]eighing the probative value of [the licenses] and their negotiation histories in the Texas Action against the burden of production on the non-party, Wi-Lan's motion to compel is denied"); *NuVasive*, 2018 WL 6567888, at *2; *In re McKey Tech.*, 2016 WL 6681178, at *3; *Personal Audio*, 2018 WL 4502002, at *1.

ST asserts that AMD possesses an "entire 'data room' of documents relating to discussions that 'culminated in the Fullbrite agreement'" that it refuses to produce.  Mot. at 9.  ST's claim is baseless.  The "data room" merely consisted of claim charts and summary presentations relating to the marketing of AMD's patents, only one of which was a patent asserted against ST.  To the extent the "data room" documents involved patents asserted against ST, this request is moot because AMD

has already produced them.

ST further asserts that AMD should be compelled to produce documents relating to AMD's pre-acquisition negotiations with Fullbrite because it vaguely asserts that the documents are "highly relevant" to the case. Mot. at 9. However, ST failed to meet its burden of proof in establishing the relevance of the pre-acquisition negotiations as required by Fed. R. Civ. P. 26 and Civil L.R. 7-2. Local Rule 37-2 requires a party moving to compel discovery to "'detail the basis for the party's contention that it is entitled to the requested discovery and show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied.'" *Glass Egg Dig. Media v. Gameloft, Inc.*, No. 17-cv-04165-MMC (RMI), 2019 WL 5720731, at *2 (N.D. Cal. Nov. 5, 2019). A party moving to compel discovery also "has the initial burden of establishing that the request satisfies the relevancy requirements of Rule 26(b)(1)." *In re Glumetza Antitrust Litig.*, No. 19-cv-05822-WHA (RMI), 2020 WL 3498067, at *7 (N.D. Cal. June 29, 2020). "[T]he rule . . . requires that any evidence that is to be offered must 'logically advance a material aspect of the party's case.'" *Id.* "[C]ourts are required to limit discovery if the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Under these rules, courts have declined to compel discovery where a party's "argument for relevancy is thin," *In re Glumetza Antitrust Litig.*, 2020 WL 3498067, at *7, or where a party merely makes "generalized arguments" about the propriety of the discovery sought to be compelled, *Glass Egg Dig. Media*, 2019 WL 5720731, at *3.

Here, ST merely makes blanket statements regarding the "likely" relevance of the Fullbrite negotiations but fails to provide any evidence or reasons why the drafts and negotiations sought here are relevant and proportional to the needs of the case, as opposed to the final agreement, which has already been produced. For example, ST asserts that "[t]he negotiation documents are likely to reveal information about how AMD and Fullbrite arrived at a purchase price for the Asserted Patents," Mot. at 9, but does not state why information relating to ***how the parties arrived*** at the purchase price is relevant to any issue in the case at hand as opposed to the ***actual purchase price***, which ST already has. It is not necessarily the case, for example, that the purchase price reflects the value of the asserted patents. That is certainly true in this case because AMD's agreement with Fullbrite was in part contracting with Fullbrite to value the patents.

7

Similarly, ST states that the "draft agreements are relevant to damages issues," Mot. at 10, but fails to specify the damages issues and why the negotiations leading up to the agreement, as distinguished from the agreement itself, are relevant to damages issues. ST also speculates that "the negotiations could be relevant to ascertaining the extent of liability of potential litigation targets, formulating litigation strategy relating to the patents at issue, and infringement and validity of the patents at issue," Mot. at 10-11, but does not provide any explanation or evidence as to how or why the negotiations are necessary to prove or establish the listed issues, much less how the unidentified need renders the burden of production of these documents proportional. Again, ST's arguments presume that AMD had all this information when it conveyed the asserted patents to Fullbrite, which is not the case and has not been shown in any way by ST. ST cannot require AMD to produce large volumes of communications and other documents related to the negotiations to go on a fishing expedition without meeting its burden of proof to show some relevance of this information to the issues in its case. As such, AMD should not be compelled to bear the burden of searching for, collecting, reviewing for privilege, and then producing the large volume of documents associated with the Fullbrite negotiations.

Throughout negotiations over the scope of this request, ST consistently insisted on the broadest possible reach for its requests. For example, AMD attempted to narrow this request to "substantive communications related to infringement, validity, and damages regarding the asserted patents." Dkt. 1-6 at 22. ST expressly refused that request: "Defendants' request is not limited to 'substantive communications relating to infringement, validity, and damages regarding the asserted patents.' Documents and communications that AMD has that concern negotiations, contracts, or agreements that relate in any way to the asserted patents are within the scope of the request." *Id.* at 21-22. Even in its motion, ST asserts that its "request for pre-acquisition negotiation documents is not limited to documents that specifically refer to the Asserted Patents, though it certainly extends to such documents." Mot. at 9. ST's insistence on drastically overbroad searching, reviewing, and production of documents is untethered from any relevance or proportionality concerns and should doom its request.

**C.      ST Is Not Entitled to a Declaration Memorializing AMD's Search Efforts**

ST claims it is entitled to a declaration documenting AMD's search efforts for documents relating to offers to sell and valuations of the Asserted Patents. ST claims the request is justified because it speculates that "AMD's searches may have been cursory or severely restricted." Mot. at 12. In support of its argument, ST cites two cases, *Collaboration Props., Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 477-78 (N.D. Cal. 2004), and *Dominguez v. Ford Motor Co.*, No. 5:21-cv-00226-JWH-SP, 2021 WL 6496838, at *2 (C.D. Cal. Dec. 1, 2021). Mot. at 12. Neither case is analogous to the facts at hand. *Collaboration Props.* involved a discovery dispute between two parties to a litigation instead of a nonparty subpoena response. 224 F.R.D. at 477-78. The Court only granted the motion to compel because the plaintiff provided "sufficient evidence supporting its concerns" about defendant's discovery responses. *Id.* Similarly, the Court in *Dominguez* only granted the plaintiff's motion to compel because its motion was unopposed. 2021 WL 6496838, at *1. Here, AMD opposes being required to produce any declaration regarding its search efforts. Thus, ST provides no authority for compelling AMD, a nonparty, to submit a declaration regarding its search efforts.

Aside from the fact that AMD is a nonparty, ST fails to provide any evidence to support its claims that AMD has not adequately searched for documents. The only support ST offers is a blanket statement that ST has "repeatedly asked" AMD to provide such documents, but AMD "allege[d] that its search turned up no documents." Mot. at 11. Courts have denied motions to compel declarations in similar situations where the movant fails to provide sufficient evidence to show that a search was inadequate. *See Williams v. Walker*, No. CIV S-07-2385 WBS GGH, 2009 WL 5199227, at *18 (E.D. Cal. Dec. 22, 2009) (refusing to compel a declaration where "plaintiff makes no showing of the inadequacy of the responses to RFP 21 and 23, other than his assertion that the defendant warrants that she has no responsive documents"); *see also Synopsys, Inc. v. Ricoh Co., Ltd.*, No. C-03-2289 MJJ, 2006 WL 1867529, at *3 (N.D. Cal. July 5, 2006) (denying a motion to compel where a defendant "pointed to only three instances in which Ricoh has allegedly not been forthcoming in producing responsive documents, and two of those instances involved discovery disputes that were not unreasonable" and where the defendant admitted it "cannot point to a specific category of documents that Ricoh was potentially withholding"). ST provides no reason for the

Court to compel AMD to provide a declaration detailing its search efforts where ST has failed to provide any evidence that AMD's response was inadequate or that AMD was intentionally withholding documents. Thus, ST's motion to compel a declaration should be denied.

### D.      AMD Has Not Waived Privilege

The parties have already resolved their dispute concerning the scope of AMD's produced privilege log. The only question for this Court is whether AMD's effort to negotiate a reasonable scope to ST's numerous overbroad document requests before preparing a privilege log constitutes waiver. ST offers no authority in support of that proposition because none exists. AMD has consistently and uniformly asserted privilege objections to all ST requests seeking privileged materials. ST's subpoena demanded compliance by January 10, 2022 (Dkt. 1-2 at 2), but ST agreed to an extension of the time to respond until January 11, 2022. Wilson Dec., Ex. 2. On January 11, 2022, AMD timely served its objections and responses to ST's subpoena requests. Dkt. 1-3. Those objections and responses included privilege objections to every one of ST's 28 document requests. *Id.* at 5-34. On June 20, 2022, AMD produced its privilege log. *See* Wilson Decl., Ex. 3. Thus, AMD preserved and has not waived its privilege objections.

Despite AMD's timely objections to the production of privileged documents, ST argues that AMD waived its privilege objections due to its "unjustified delay" in providing a privilege log. Mot. at 13. However, AMD's delay was not "unjustified" as ST claims. ST attempts to impugn AMD by claiming that it "consistently requested a log relating to the same topics for over four months" since "before February 2022." Mot. at 14. This statement is blatantly inaccurate as shown by ST's own statements. In February 2022, ST requested AMD produce a privilege log as broad as the subpoena requests, which AMD refused. *See* Dkt. 1-6 at 26 (asserting that AMD "agreed to look for documents relating to most of defendants' requests" and requesting "a log to describe any privilege documents withheld from production"). One very significant example of the difference in scope relates to the Global Foundries license, where ST asserted in February 2022 that "the highly relevant information sought by defendants includes … documents relating to any GlobalFoundries license to the asserted patents." *Id.* As AMD explained on May 26, 2022, after it had already agreed to produce a privilege log of limited scope, ST's much broader request would cover "the

negotiations over AMD's spinoff of Global Foundries…, which would implicate an enormous collection of documents related to the sale of that business that would be completely irrelevant to valuing the asserted patents." *Id.* at 3. On May 31, 2022, ST finally conceded that "Defendants do not expect AMD to log documents relating to the GlobalFoundries spinoff or any cross license unless those documents discuss the asserted patents." *Id.* at 2. Thus, as ST's own email correspondence shows, the scope of document production and the corresponding privilege log continued to be disputed until three weeks ago.

Despite ST's continued requests for far broader production, AMD provided a reasonable scope for its privilege log on May 18, 2022. Dkt. 1-6 at 4-5. ST subsequently agreed to the scope of AMD's proffered privilege log. *Id.* at 2. AMD provided ST with that privilege log on June 20, 2022. *See* Wilson Decl., Ex. 3. Any delay was directly caused by ST's own overbroad requests.

Even if AMD's delay were not justifiable—and it plainly is—courts have declined to impose the harsh penalty of waiver of the attorney-client privilege as a result of a mere delay in production of a privilege log. *See Lofton v. Verizon Wireless LLC*, 308 F.R.D. 276, 282 (N.D. Cal. 2015) (refusing to find a waiver of privilege where a party has had an "extreme delay" in failing to produce a privilege log for over a year); *In re Subpoena to Produce Documents of Clapp, Moroney, Bellagamba, Vucinich, Beeman & Scheley*, No. 14-mc-80191-RS, 2014 WL 3784112, at *3 (N.D. Cal. July 31, 2014) (finding that a "minor delay in the production of the privilege log does not constitute waiver" where a nonparty failed to provide a privilege log for a month); *Quality Inv. Props. Santa Clara, LLC v. Serrano Elec., Inc.*, No. C 09-5376 LHK, 2011 WL 1364005, at *3 (N.D. Cal. Apr. 11, 2011) (holding that a party that delayed producing a privilege log for three months did not waive privilege). Thus, the Court should not find that AMD's delay waived privilege, especially since the delay was caused by AMD's good faith attempts to determine the scope of documents that needed to be logged due to ST's overbroad document requests.

ST's reliance on *Burlington Northern & Santa Fe Railway Co. v. United States District Court for District of Montana*, 408 F.3d 1142, 1149 (9th Cir. 2005), is misplaced because *Burlington* did not involve a response to a nonparty subpoena and instead involved a party's failure to comply with Rule 34 for five months. *Id.* *Burlington* is readily distinguishable.

11

III.     **CONCLUSION**

For the foregoing reasons, AMD respectfully requests ST's Motion to Compel be denied.

Dated:  June 24, 2022                                    Respectfully submitted,

ARMOND WILSON LLP


By:  /s/ *Michelle E. Armond*
        Michelle E. Armond
        Douglas R. Wilson

*Attorneys for Respondent*
*Advanced MicroDevices, Inc.*

12